UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: PETTINGILL ENTERPRISES, INC.,
A New Mexico corporation,

and

DAVID PETTINGILL and
PAMELA PETTINGILL,

Debtors.                                Jointly administered under
                                        Case No. 11-12-10515 JA

## MEMORANDUM OPINION

THIS MATTER is before the Court on the Motion to Allow Priority Administrative Expense filed by Bane Machinery, Inc. ("Bane Machinery"), by and through its attorney of record, Puccini Law, PA (Louis Puccini). *See* Docket No. 135 (the "Motion"). Debtor Pettingill Enterprises, Inc. ("PEI") opposes the Motion. *See* Objection to Motion to Allow Bane Machinery Priority Administrative Expense, Docket No. 178; Supplemental Objection to Motion to Allow Bane Machinery Priority Administrative Expense, Docket No, 218 (together the "Objection"). The Court held a final evidentiary hearing on the Motion on November 7, 2012 and took the matter under advisement.

Bane Machinery asks the Court to allow, as a priority administrative expense and a super-priority administrative expense, charges in the amount of $233,687.54 for PEI's post-petition use of Bane Machinery's construction equipment, damage to the equipment, and hauling costs. After consideration of the Motion, the Objection, the evidence presented at the final hearing, argument of counsel, and applicable provisions of the Bankruptcy Code and case law, and being otherwise sufficiently informed, the Court concludes that Bane Machinery is entitled to an administrative

expense in the amount of $110,402.98, of which $6,992.92 is entitled to super-priority administrative status, for: (1) post-petition rent; (2) charges in connection with excess hours of use of the equipment; and (3) hauling charges.[1]

## FINDINGS OF FACT

PEI is a family-owned corporation organized under the laws of the State of New Mexico. PEI engages in various excavation and construction activities. In November and December of 2010, PEI entered into three lease agreements with Bane Machinery for the rental of construction equipment (together the "Rental Contracts" and individually a "Rental Contract"). The same form was used for the first page of each Rental Contract. A separate Rental Contract was executed for the lease by Bane Machinery to PEI of each of the following pieces of equipment: (1) a Kobelco Excavator SK480LCVI (the "Kobelco 480") at a rental rate of $6,918.19 per month (2) a Kobelco Excavator SK485LCVIII (the "Kobelco 485") at a rental rate of $6,918.19 per month; and (3) a Kawasaki Wheel Loader (the "Kawasaki") at a rental rate of $5,870.82 per month. Under each Rental Contract, rent is payable in advance.

The Rental Contracts require PEI to maintain the equipment in the same condition as received except for normal wear. *See* Bane Machinery's Exhibits B, D, and F. PEI inspected the equipment at the beginning of the lease terms and did not object to the condition of the rental equipment at that time. The Kawasaki Rental Contract includes a page on the reverse side titled "General Conditions of Rental" (the "Terms and Conditions"). *See* Bane Machinery's Exhibit B. The Terms and Conditions contain detailed provisions about the maintenance, repair, and

---

[1] The Court calculated this amount by multiplying the total monthly rent ($19,707.20) by the number of months between the Petition Date and the date PEI rejected the Rental Contracts. The Court calculated the pro rata portion of the rent for the months of February and July by multiplying the number of days in each month by the daily rental rate. Since 2012 was a leap year, the Court used a 29-day month to calculate the daily rental rate for the month of February. *See In re Furr's Supermarkets, Inc.,* 283 B.R. 60, 66-67 (10th Cir. B.A.P. 2002) (applying the proration rule to calculate rent incurred during the month in which a Chapter 11 case is commenced).

removal of the rental equipment. Pursuant to the Terms and Conditions, PEI is required to: (1) return all equipment to Bane Machinery's warehouse and/or pay all expenses incidental to the removal of the equipment; (2) pay Bane Machinery a pro rata portion of the applicable rental rate for any use of the equipment above 160 hours in a four-week period ("Excess Hours Charges"); and (3) pay for repairs or replacements of all parts damaged by misuse, improper maintenance, or for all other extraordinary damage done. *See* Bane Machinery's Exhibit B. The first page of the Rental Contracts for the Kobelco 480 and the Kobelco 485 in evidence refer to general conditions which appear on the reverse side of each form. The reverse sides of those Rental Contracts are not in evidence. The same form was used for the front side of each Rental Contract, which includes the language "lessee agrees to general conditions on reverse side." Two of the Rental Contracts were executed on the same date. The third Rental Contract was executed about a month later. Furthermore, PEI did not dispute Bane Machinery's assertion that it is entitled to collect post-petition Excess Hours Charges and hauling expenses following PEI's surrender of the equipment to Bane Machinery. The Court finds that the Terms and Conditions in evidence as part of the Kawasaki Rental Contract also apply to the two Kobelco Rental Contracts.

On February 14, 2012, PEI filed a voluntary petition under Chapter 11 of the Bankruptcy Code (the "Petition Date"), thereby commencing this Chapter 11 case (the "Chapter 11 Case"). In early March, 2012, Bane Machinery sent a representative to inspect the three pieces of rental equipment. The representative did not testify at the final hearing. Nor was the report of the results of the inspection proffered in evidence. Scott Bane, the President of Bane Machinery, testified that the representative orally reported to him that the equipment had been damaged. The extent of that damage is unclear from the record. Mr. Bane assumed that if the equipment had

-3-

sustained substantial damage the representative would have reported it to him after visiting PEI's worksite.

Prior to the Petition Date, PEI had been experiencing trouble with the internal pins that held the track of the Kobelco 480 together. Although PEI regularly replaced the pins, they continued to break. On March 7, 2012, a track on the Kobelco 480 stopped working. The Kobelco 480 was functional but could not be moved; it therefore provided no benefit to PEI for two months. PEI initially contacted Bane Machinery to request a new track. Bane Machinery agreed to repair the track for $25,000, but PEI declined. It took approximately two months for PEI to solicit price quotes from different businesses and repair the track. David Pettingill, the co-owner of PEI, contacted various suppliers in Texas and New Mexico regarding the repair. The delay in obtaining an acceptable bid resulted from PEI seeking a price to repair the track that was lower than the price quoted by Bane Machinery. Mr. Bane testified that Bane Machinery could have repaired the track within one week. As a result of the broken track, the Kobelco 480 was out of service between March 7, 2012 and May 7, 2012.

On May 25, 2012, Bane Machinery filed a motion to compel PEI to either assume or reject the Rental Contracts, as well as a motion to compel PEI to abandon Bane Machinery's equipment. The Honorable James Starzynski entered an Order Providing Interim Adequate Protection to Bane Machinery on July 3, 2012 (the "Adequate Protection Order").[2] *See* Docket No. 210. The Adequate Protection Order provided that, commencing July 2, 2012, PEI would be required to make total monthly rental payments of $19,707.20 in connection with the Rental Contracts. PEI failed to make the required rental payments, and Bane Machinery repossessed the equipment on July 12, 2012. The parties stipulated that PEI rejected the Rental Contract on July 12, 2012.

---

[2] The Chapter 11 Case was transferred to the Honorable Robert H. Jacobvitz on August 7, 2012.

After repossessing the equipment, Bane Machinery hauled the equipment to its headquarters in Dallas, Texas at its own expense. Bane Machinery employed a moving company to haul the Kobelco 480 and the Kobelco 485 from Oklahoma to Dallas. Bane Machinery was not able to haul those pieces of equipment either because it did not have the proper permits to haul heavy equipment in Oklahoma or because it did not have equipment suitable to haul the Kobelco machines. The evidence is unclear as to which reason. Bane Machinery incurred: (1) $5,629.00 in charges for hauling the Kobelco 480 from Oklahoma; and (2) $6,648.22 in charges for hauling the Kobelco 485 from Oklahoma. It is unclear from the record whether Bane Machinery hired a third party to haul the Kawasaki from Waco, Texas to Dallas, Texas. However, the uncontroverted testimony is that Bane Machinery actually incurred $2,163.96 in charges for hauling the Kawasaki.[3] *See* Bane Machinery's Exhibit K.

When Bane Machinery repossessed the equipment, it was substantially damaged. All of the machines were dented and scratched. Both buckets on the Kobelco excavators were missing teeth, and the bucket on the Kobelco 485 was cracked. At some point PEI used a bungee cord to fasten a broken exterior panel to the engine of the Kobelco 485. Bane Machinery repairs equipment for customers in the ordinary course of business. Bane Machinery performed various repairs in order to restore the rental equipment to its previous condition. Including labor charges and excluding tax, the repair charges were: (1) $57,189.20 for the Kobeclo 485; (2) $40,879.21 for the Kobelco 480; and (3) $10,059.92 for the Kawasaki. These charges were calculated as if Bane Machinery had repaired the equipment for a retail customer. PEI also incurred $3,169.93 in post-petition Excess Hours Charges in connection with the Kobelco 485 and $3,990.83 in post-petition Excess Hours Charges in connection with the Kawasaki. Bane Machinery

---

[3] The Court calculated each of the hauling charges by subtracting the rental charges for the month of July, 2012 from the figure titled "Final Rental Invoice and Hauling" in Bane Machinery's Exhibit K.

calculated the Excess Hours Charges by multiplying the hourly rental rate by the number of hours PEI used the rental equipment over 160 hours. Bane Machinery multiplied that figure by the number of four week periods that PEI rented the equipment.[4]

## DISCUSSION

Section 503 of the Bankruptcy Code establishes criteria for the allowance of administrative claims. Pursuant to 11 U.S.C. § 503(b)(1)(A), "the actual, necessary costs and expenses of preserving the estate" shall be allowed as administrative expenses. Administrative expenses allowed under Section 503(b) are entitled to priority under 11 U.S.C. § 507(a)(2).[5] "The policy behind such priority is to encourage creditors to extend credit and supply debtors with goods and services post-petition in order to increase the likelihood that a successful reorganization will occur." *In re Commercial Financial Services, Inc.,* 246 F.3d 1291, 1293 (10th Cir. 2001). *See also In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir.1976) ("The purpose of these [Section 503] of the Bankruptcy Code is to facilitate the rehabilitation of insolvent businesses by encouraging third parties to provide those businesses with necessary goods and services.").

Generally, the party claiming entitlement to a priority administrative expense under Section 503(b) has the burden of proving the following:

> (1) the claim resulted from a post-petition transaction; and
> (2) the claimant supplied consideration that was beneficial to the debtor-in-possession (or trustee) in the operation of the company's business.

*Peters v. Pikes Peak Musicians Ass'n*, 462 F.3d 1265, 1268 (10th Cir. 2006); *In re Mid Region Petroleum, Inc.,* 1 F.3d 1130, 1132 (10th Cir. 1993) (noting that the party claiming entitlement to a priority administrative expense has the burden of proof). Administrative priorities should be

---

[4] The Court incorporates into its findings of fact any additional findings of fact set forth below.
[5] Section 507(a)(2) provides that "administrative expenses allowed under [S]ection 503(b) of this title" shall have second priority in the distribution of assets of the estate.

-6-

narrowly construed "because the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among [the] creditors." *In re Amarex*, 853 F.2d 1526, 1530 (10th Cir. 1988).

1.  *Rental Charges*

Bane Machinery asks the Court to allow all post-petition rental charges as a priority administrative expense. Pursuant to 11 U.S.C. § 365(d)(2), an unexpired lease of non-consumer personal property may generally be assumed or rejected in a Chapter 11 case at any time before confirmation of a plan of reorganization. Unless and until the personal property lease is assumed or rejected, a debtor-in-possession in a Chapter 11 case is required to perform all obligations owing under the lease, including the obligation to pay rent, first arising on or after 60 days after the order for relief, unless the Court orders otherwise. 11 U.S.C. § 365(d)(5). Section 365(d)(5) provides, in relevant part:

> The Trustee shall timely perform all of the obligations of the debtor ... first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property ... until such lease is assumed or rejected notwithstanding section 503(b)(1) of this title, unless the court… orders otherwise.

11 U.S.C. § 365(d)(5).

The provisions in Section 365(d)(5) were added to the Bankruptcy Code in 1994 to make it easier for lessors of personal property to recover post-petition lease payments before the debtor in possession assumes or rejects the lease.[6] *In re Midway Airlines, Corp.,* 406 F.3d 229, 243 (4th Cir. 2005). Section 365(d)(5) was modeled after Section 365(d)(3), which addresses post-petition lease payments in connection with non-residential real property. *In re Lakeshore Const. Co. of Wolfeboro, Inc.,* 390 B.R. 751, 755-756 (Bankr.D.N.H. 2008) (citing 11 U.S.C. §§ 365(d)(3), (5)). Unlike Section 365(d)(3), which requires debtors to pay all rental obligations

---

[6] Prior to 2005, Section 365(d)(10) was designated as Section 365(d)(5). *See* Pub.L. 109-8, § 328(a)(3)(B). The Court will therefore look to decisions construing Section 365(d)(10) in interpreting Section 365(d)(5).

-7-

under non-residential real property leases that become due immediately after the petition date, Section 365(d)(5) requires payment of rental obligations under non-consumer personal property leases "that initially become due more than 60 days after the order for relief."[7] *In re Stone Barn Manhatten LLC,* 405 B.R. 68, 76 (Bankr.S.D.N.Y. 2009) (quoting 140 Cong. Rec. S14462 (daily ed. Oct. 6, 1994)). Section 365(d)(5) strikes "a balance between the debtor-in-possession's need for time to reject non-beneficial personal property leases without creating administrative claims against the estate, and the lessor's right to get paid for the leased goods." *In re Furley's Transport, Inc.*, 263 B.R. 733, 740 (Bankr.D.Md.2001).

### a. Rental Charges Accruing 60 Days After the Petition Date

A majority of courts, including the Tenth Circuit Bankruptcy Appellate Panel, have held that Sections 365(d)(3) and (d)(5) give rise to an automatic administrative expense claim for certain rental obligations accruing under a post-petition lease regardless of whether the rental property provided a benefit to the estate under Section 503(b). *See In re Furr's Supermarkets, Inc.,* 283 B.R. 60, 65 (10th Cir. BAP 2002) ("[L]essors, as opposed to typical administrative expense claimants under § 503(b)(1), are not required to establish value or prove a benefit to the estate to establish the amount of their claim, but rather are entitled to current payment of the amounts required under their leases.").[8] The Court agrees that the phrase "notwithstanding

---

[7] "The commencement of a voluntary case … constitutes an order for relief." 11 U.S.C. § 301(b).

[8] *See also In re Cukierman,* 265 F.3d 846, 850 (9th Cir. 2001) ("[T]he 'notwithstanding section 503(b)(1)' proviso exempts the amount of lease obligations that a trustee must timely pay under § 365(d)(3) from [scrutiny under] § 503(b)(1)"); *In re Patella,* 102 B.R. 223, 224 (Bankr.D.N.M. 1989) (J. Rose) ("[T]he majority of the cases all assume that § 363(d)(3) mandates automatic administrative expense treatment of the amount provided for in the lease."); *In re Telligenix Corp.,* 436 B.R. 211, 214 (Bankr.M.D.Fla. 2010) (noting that "a lessor is *automatically* entitled to an administrative expense claim for rent accruing post-petition.") (emphasis in original); *In re Duckwall-ALCO Stores, Inc.*, 150 B.R. 965, 971 n. 10 (D.Kan.1993) ("Lease obligations under § 365(d)(3) are not subject to requirements of § 503 for payment of administrative expenses."); *In re Stone Barn Manhattan LLC*, 398 B.R. 359, 367 n. 5 (Bankr.S.D.N.Y.2008) (same); *In re Goody's Family Clothing, Inc.,* 401 B.R. 656, 668 (same); *In re Iron Age Corp.,* 378 B.R. 419, 423 (Bankr.D.Mass. 2007) (same); *But see In re Sturgis Iron & Metal Co., Inc.,* 420 B.R. 716, 743-745 (Bankr.W.D.Mich. 2009) (rejecting the notion that 365(d)(5) automatically entitles the lessor to an administrative expense claim for all rent accruing on or after the 60th day after the petition date).

section 503(b)(1) of this title" means that a lessor is entitled to recover rental payments at the contract rate in spite of not being entitled to recover those same payments under Section 503(b). Thus, under Section 365(d)(5), a lessor is entitled to automatically recover, as an administrative expense, any "rent claim[s] becoming due [between] the 60th day after the filing of the bankruptcy petition and the acceptance or rejection of the lease." *In re Lakeshore Const. co. of Wolfeboro, Inc.,* 390 B.R. at 756.

PEI commenced its Chapter 11 case on February 14, 2012 and rejected the Rental Contracts on July 12, 2012. The 60th day after the Petition Date was April 14, 2012. PEI contends that it is entitled to offset a portion of the rental charges because the Kobelco 480 was out of service between March 7, 2012 and May 7, 2012. Under Section 365(d)(5), however, Bane Machinery is not required to prove that the leased equipment actually benefitted the estate to recover rental charges accruing on or after the 60th day following the Petition Date. *See* supra, note 7. The fact that the Kobelco 480 was out of service on or after April 14, 2012 therefore has no bearing on Bane Machinery's administrative expense claim. Bane Machinery is automatically entitled to recover, as an administrative expense, all rental charges accruing from April 14, 2012 through July 12, 2012 ($58,210.51).[9] Further, because PEI failed to pay any adequate protection payments as ordered by the Honorable James Starzynski, $6,992.92 of those rental charges will be allowed as a super priority administrative expense claim.[10]

---

[9] The Court arrived at this figure by multiplying the monthly rent for each piece of equipment by the number of days between the April 14, 2012 and July 12, 2012 (the date PEI rejected the Rental Contracts). The Court calculated the pro rata portion of the rent for the months of April and July by multiplying the number of days in each month by the daily rental rate.

[10] A creditor is entitled to a superpriority administrative expense claim when it has been granted adequate protection of its collateral but the adequate protection fails. *See* 11 U.S.C. § 507(b); *In re Blehm Land & Cattle Co.,* 859 F.2d 137, 142 (10th Cir. 1988).

*b. Rental Charges Accruing During the First 59 Days After the Petition Date*

In order to recover rental payments that accrue during the first 59 days after the petition date under a pre-petition lease of non-consumer personal property in Chapter 11 cases, the lessor must show that the debtor in possession gained some benefit from the property under Section 503(b). *See In re Furley's Transport, Inc.,* 263 B.R. 733, 741 (Bankr.D.Md. 2001) (holding that lessor may recover rental payments under Section 503(b) during the first 59 days after of a case).[11] In the Tenth Circuit, mere possession of the leased property does not constitute a benefit to the estate under Section 503(b). *In re Mid Region Petroleum, Inc.,* 1 F.3d 1130, 1133 (10th Cir.1993).[12] The debtor in possession must actually use the property to warrant the lessor's administrative expense claim. *Id.* There is presumption that the contractual rate is the reasonable value of the goods or services provided to the estate under Section 503(b). *Matter of Braniff Airways, Inc.,* 783 F.2d 1283, 1285 (5th Cir. 1986).[13] This presumption can be rebutted if the debtor introduces convincing evidence to the contrary. *Id.*

PEI used the Kobelco 485 and the Kawasaki continuously during the first 59 days after the Petition Date. PEI used the machines to excavate rock, which it later sold. The Court is satisfied that the actual use of those machines provided a tangible benefit to the estate under

---

[11] *See also In re Russell Cave Co.,* 247 B.R. 656, 659 (Bankr.E.D.Ky. 2000) (lessors may recover administrative expenses "relative to unexpired leases of personal property pursuant to § 503(b)(1) up until the 60th day after filing, after which the trustee is required to perform the debtor's obligations under the lease."); *In re Pan Am. Airways Corp.*, 245 B.R. 897, 899 (Bankr.S.D.Fla. 2000) (allowing lessor of personal property to recover rental payments accruing during the first 59 days of the case to the extent those payments represented the "actual, necessary costs and expenses of preserving the estate" under Section 503(b)); *In re Stone Barn Manhattan LLC,* 405 B.R. 68, 76 (Bankr.S.D.N.Y. 2009) (same).

[12] *In re Mid Region Petroleum, Inc.* was decided before Section 365(d)(5) was added to the Bankruptcy Code. Consequently, it is not applicable to rental obligations under non-consumer personal property leases in Chapter 11 cases that accrue on or after the 60th day after the Petition Date. Because the analysis focused on whether certain rental obligations should be allowed as an administrative expense under Section 503(b), however, the case is still controlling law in the Tenth Circuit as to whether the rental obligations accruing during the first 59 days after the Petition Date provided an actual benefit to the estate.

[13] *See also Sharon Steel Corp. v. National Fuel Gas Distribution Corp.,* 872 F.2d 36, 42 (3rd Cir. 1989) (noting that the "actual and necessary cost and expense of preserving the estate under § 503(b) is presumptively the rate under the service agreement"); *In re Dant & Russell, Inc.,* 853 F.2d 700, 707 (9th Cir. 1988) (same).

-10-

Section 503(b). Furthermore, PEI did not provide evidence that the rate in any of the Rental Contracts exceeded the reasonable rental value to the estate for its use of the equipment. Bane Machinery is therefore entitled to recover all of the rental charges in connection with the Kobelco 485 and the Kawasaki that accrued during the first 59 days after the Petition Date ($25,386.91).[14]

Although PEI initially used the Kobelco 480 after the Petition Date, the track broke on March 7, 2012. The Kobelco 480 was out of service between March 7, 2012 and May 7, 2012. "Because a benefit to the estate results only from use of the leased property," *In re Mid Region Petroleum, Inc.,* 1 F.3d at 1133, Bane Machinery is not entitled to recover rental payments, as an administrative expense, accruing between March 7, 2012 and April 13, 2012 (the 59th day after the Petition Date). However, for the reasons described above, Bane Machinery may recover rental charges in connection with the Kobelco 480 that accrued between February 14, 2012 and March 6, 2012 ($5,203.62).[15]

    c. *Consequential Damages*

PEI also seeks to offset Bane Machinery's administrative expense claim with the amount of consequential damages it suffered as a result of lost profits during the two-month period it could not use the Kobelco 480. PEI argues that it lost approximately $100,000 in revenue as a result of the Kobelco 480 being out of service. A party claiming entitlement to consequential damages under a contract must prove that: (1) a breach occurred; (2) it suffered losses beyond

---

[14] The Court arrived at this figure by multiplying the monthly rent for the Kobelco 485 and the Kawasaki by the number of days between the February 14, 2012 (the Petition Date) and April 13, 2012 (the 59th day after the Petition Date). The Court calculated the pro rata portion of the rent for the months of February and April by multiplying the number of days in each month by the daily rental rate. Since 2012 was a leap year, the Court used a 29-day month to calculate the daily rental rate for the month of February.

[15] The Court arrived at this figure by multiplying the monthly rent for the Kobelco 480 by the number of days between the February 14, 2012 (the Petition Date) and March 6, 2012 (the day before the track broke). The Court calculated the pro rata portion of the rent for the months of February and March by multiplying the number of days in each month by the daily rental rate. Since 2012 was a leap year, the Court used a 29-day month to calculate the daily rental rate for the month of February.

the breaching party's failure to perform under the contract; and (3) the losses were reasonably foreseeable upon entering into the contract. *See generally* Restatement (Second) of Contracts § 347 (1981).

Because PEI has not demonstrated that Bane Machinery breached the lease, it is not entitled to recover consequential damages. The Rental Contracts require PEI, not Bane Machinery, to maintain the equipment. They also provide that "the equipment is deemed used and is leased on an 'as is, where is' basis." *See* Bane Machinery's Exhibit B. It is possible that Bane Machinery breached the Rental Contracts by leasing defective equipment or that the repair to the Kobelco 480 track was an extraordinary repair not necessitated by misuse or lack of maintenance to be made by Bane Machinery under the Rental Contract. However, PEI did not establish such a breach or extraordinary repair. Mr. Pettingill testified that PEI had been experiencing problems with a track on the Kobelco 480 for some time. It is unclear from the record whether, and to what extent, the damage to the track occurred as result of PEI's failure to maintain the equipment. PEI is therefore not entitled to offset Bane Machinery's administrative expense claim with consequential damages stemming from Bane Machinery's alleged breach of the Rental Contracts.[16]

*2. Excess Hours Charges*

Next, Bane Machinery contends that it is entitled to recover, as an administrative expense, post-petition Excess Hours Charges in connection with PEI's use of the Kobelco 485 and the Kawasaki.[17] The Rental Contracts require PEI to pay Bane Machinery a pro rata portion of the applicable rental rate when the equipment is used more than 160 hours in a four week

---

[16] In addition, a lost profits claim is measured by loss of profits, not loss of revenue. The evidence does not establish the amount of profit PEI lost while the Kobelco 480 was out of service.
[17] PEI did not incur Excess Hours charges in connection with the Kobelco 480, presumably because it was out of service for two months after the Petition Date. *See* Bane Machinery's Exhibit K.

-12-

Case 12-10515-j7    Doc 415    Filed 02/06/13    Entered 02/06/13 14:50:11 Page 12 of 17

period. PEI does not dispute that the requested Excess Hours Charges arose post-petition. The Court is also convinced that the Excess Hours Charges "result[ed] in an actual and demonstrable benefit to [PEI's] estate and the creditors." *In re Williams*, 2002 WL 31424856, * 3 (10th Cir. Oct. 30, 2002) (citing *In re Lister,* 846 F.2d 55, 57 (10th Cir. 1998). Between the Petition Date and the date the Rental Contracts were rejected, PEI derived much of its income from excavating rock. PEI was paid for each ton it produced. Thus, the more PEI used the equipment, the more income it generated.

The Court therefore concludes that Bane Machinery is entitled to recover the full amount of Excess Hours Charges ($7,160.76) as an administrative expense.

*3. Repair charges*

Bane Machinery also seeks allowance of the cost of repairing the equipment as an administrative expense. Bane Machinery charged: (1) $57,189.20 to repair the Kobeclo 485; (2) $40,879.21 to repair the Kobelco 480; and (3) $10,059.92 to repair the Kawasaki.

The Tenth Circuit Court of Appeals has not addressed the issue of whether repair costs associated with a debtor's post-petition use of leased equipment constitute administrative expenses. However, a number of courts have held that such costs are entitled to administrative priority under Section 503(b). In *In re United Trucking, Service, Inc.,* 851 F.2d 159, 160-162 (6th Cir. 1988), for example, the debtor entered into a pre-petition equipment lease which provided that the debtor would maintain the trailers in good condition and make all necessary repairs at its own expense. After commencing the bankruptcy case and rejecting the lease, the debtor returned the equipment to the lessor in poor condition. *Id.* at 160. The lessor asserted that it was entitled to an administrative claim for, among other things, the cost of repairing the damaged equipment. *Id.* The Sixth Circuit Court of Appeals held that post-petition damage claims may be treated as

-13-

administrative expenses. *Id.* at 162. The court reasoned that by failing to repair the equipment in accordance with the lease terms, the debtor was able "to use the money saved and not paid for [the creditor's] benefit … to continue its operations. *Id.*[18]

The Court agrees that repair costs stemming from PEI's post-petition damage to the equipment, if any, should be treated as an administrative expense. Under 11 U.S.C. § 365(d)(5), Bane Machinery was required to perform rental obligations accruing on or after 60 days after it commenced the Chapter 11 case. By the terms of the Rental Contracts, PEI had an obligation to keep the equipment in good repair.

In order to collect such repair charges, however, Bane Machinery must prove that the repair costs arose from *post-petition* damage to the leased property.[19] *Peters v. Pikes Peak Musicians Ass'n*, 462 F.3d 1265, 1268 (10th Cir. 2006) (any administrative expense claims must result from a post-petition transaction). *See also In re Atlantic Container Corp.,* 133 B.R. 980, 992 (Bankr.N.D.Ill. 1991) ("Only the costs of remedying damages to the [property] which *actually occurred after the filing* of the bankruptcy petition may be treated as administrative expenses.") (emphasis added); *In re Lakeshore Const. Co. of Wolfeboro, Inc.,* 390 B.R. 751, 757 (Bankr.D.N.H. 2008) (lessor was not entitled to recover repair costs as an administrative expense where it "presented no evidence of when the damage to the equipment occurred"); *In re United Trucking Service, Inc.,* 851 F.2d at 164 ("Only post-filing damages may be treated as an administrative expense").

---

[18] *See also In re Hayes Lemmerz Intern., Inc.,* 340 B.R. 461, 479 (Bankr.D.Del. 2006) (lessor was entitled to an administrative priority expense where lessee failed to repair leased machines); *In re Atlantic Container Corp.,* 133 B.R. 980, 992 (Bankr.N.D.Ill. 1991) ("The DIP's … failure to perform their post-petition repair and maintenance obligations gives rise to an administrative expense claim for any damages arising therefrom."); 3 Norton Bankruptcy Law & Practice (Third) § 49:23 ("[E]xpenses related to the preservation of the estate may include costs associated with repair and maintenance of the estate's assets").

[19] PEI filed a voluntary Chapter 11 case. As a result, the petition date and the date of the order for relief are the same. *See* 11 U.S.C. § 301(b). The Court is making no determination as to whether the petition date or the date of the order for relief would be the operative date for recovery of an administrative expense in an involuntary case.

Bane Machinery has failed to demonstrate that any particular damage to the equipment occurred after the Petition Date. Although Bane Machinery sent a representative to inspect the equipment shortly after the Petition Date, the representative did not testify at the final hearing; nor was any inspection report proffered in evidence. Mr. Bane assumed that the representative would inform him if any substantial damage had occurred. However, there is no evidence about any affirmative oral report by the representative about the condition of the equipment or about specific damage the representative observed at the inspection.[20] Bane Machinery took photographs of the equipment after it was repossessed but produced no photos taken at the inspection. Based on the evidence, the Court is unable to determine whether the damage to the equipment occurred pre-petition or post-petition.

The Court therefore concludes that Bane Machinery is not entitled to an administrative expense claim for the costs it incurred in repairing the leased equipment.

*4. Hauling Charges*

Finally, Bane Machinery asks the Court to allow the hauling charges it incurred in removing the equipment from PEI's worksite as an administrative expense. Pursuant to Section 365(d)(5), PEI is obligated to "perform *all of the obligations* … first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property ... until such lease is assumed or rejected." 11 U.S.C. § 365(d)(5) (emphasis added). It is undisputed that Bane Machinery incurred the hauling charges more than 60 days after the Petition Date; Bane Machinery repossessed the equipment on July 12, 2012.

---

[20] At some point prior to the Petition Date, Bane Machinery repaired all of the damage on the Kobelco 480 after a boulder hit the cab. However, there is no evidence when those repairs occurred. The Court is unable to determine whether the Kobelco 480 was in good repair on the Petition Date.

-15-

PEI was also obligated under the Rental Contracts to pay "all expenses incidental to … removal" of the rental equipment. *See* Terms and Conditions, ¶ 13.[21]

Several courts have concluded that lessors are not entitled to recover charges associated with hauling and repossessing equipment as an administrative expense. *See, e.g., Jartran, Inc.,* 886 F.2d 859, 871 (7th Cir. 1989) (affirming bankruptcy court's denial of administrative claim for hauling costs because lessor "acted in its own interest in repossessing its own equipment" rather than in the interest of the estate); *In re Robinson,* 225 B.R. 228, 232 (Bankr.N.D.Okla. 1998) (noting that costs associated with repossessing a vehicle were not administrative expenses because such expenses provided no benefit to the estate under Section 503(b)). The Court agrees that, under Section 503(b), it's not entirely clear whether the hauling costs provided any actual benefit to the bankruptcy estate. However, because PEI is obligated to pay such costs under the terms of the Rental Contracts and because they accrued more than 60 days after the Petition Date and prior to the rejection of the Rental Contracts, Bane Machinery is automatically entitled to recover the hauling charges under Section 365(d)(5).[22] *See In re Lakeshore Const. Co. of Wolfeboro, Inc.,* 390 B.R. at 758 (noting that in order to recover costs associated with the repossession and transport of rental equipment under Section 365(d)(5), the lessor must prove that the debtor in possession was obligated under the lease to pay costs incidental to transfer the equipment).

---

[21] The Rental Contracts provide, in relevant part:
    In case of default of any of the terms of this agreement, Lessor their agents or servants     [sic], may at its options enter the premises where said equipment may be found and remove same therefrom, without notice, or demand, and without being guilty of any trespass or wrong. Lessor is not liable for any damage because of such removal of equipment, and Lessee agrees to pay all expenses incidental to said removal.
The Rental Contracts also require PEI to deliver the equipment to Bane Machinery's warehouse upon the expiration of the leases.

[22] The parties stipulated that PEI rejected the Rental Contracts on July 12, 2012, the same date Bane Machinery hauled the equipment to its headquarters. Because PEI did not argue that the rejection occurred before the hauling took place, the Court will presume that the rejection occurred afterward.

-16-

The Court therefore concludes that Bane Machinery is entitled to recover the full amount of the hauling charges ($14,441.18) as an administrative expense claim under Section 365(d)(5).

CONCLUSION

Based on the foregoing, the Court will grant, in part, and deny, in part, Bane Machinery's Motion. Bane Machinery is entitled to an administrative expense in the amount of $110,402.98, of which $6,992.92 is entitled to super-priority administrative status, for: (1) post-petition rent; (2) charges in connection with excess hours of use of the equipment; and (3) hauling charges

The Court will enter an order consistent with this Memorandum Opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: February 6, 2013

COPY TO:

Michael Romeo Demarco
Box 390
McIntosh, NM 87032

Louis Puccini, Jr
P.O. Box 50700
Albuquerque, NM 87181-0700

-17-

Case 12-10515-j7    Doc 415    Filed 02/06/13    Entered 02/06/13 14:50:11 Page 17 of 17