UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:
PETTINGILL ENTERPRISES, INC.,
        a New Mexico corporation,

    and

DAVID PETTINGILL and                                  Jointly administered under
PAMELA PETTINGILL,                                      Case No. 11-12-10515 JA

    Debtors.

## MEMORANDUM OPINION

THIS MATTER is before the Court on various motions to dismiss or convert the above-captioned bankruptcy cases (collectively the "Motions"). *See* Docket Nos. 337, 338, 468, 472, 474, and 478. The Court held a final evidentiary hearing on the Motions on June 27, 2013 and July 16, 2013 and took the matter under advisement. All parties agree that cause exists to either convert or dismiss the cases and that the cases should not remain in Chapter 11. Pettingill Enterprises, Inc. ("PEI") and David and Pamela Pettingill (the "Individual Debtors") urge the Court to dismiss the bankruptcy cases, asserting that conversion would be prejudicial to creditors. Several of the larger creditors urge the Court to convert one or both of the cases to Chapter 7 so that a trustee can locate and liquidate assets for the benefit of creditors. Other creditors and the United States Trustee urge the Court to dismiss the cases to optimize the prospect of recovery for unsecured creditors. After consideration of the Motions, the evidence, and applicable law, the Court agrees that cause exists to convert or dismiss the Chapter 11 cases, and finds that conversion of both cases to Chapter 7 is in the best interest of the creditors and the bankruptcy estate.

## FINDINGS OF FACT

PEI is a family-owned corporation organized under the laws of the State of New Mexico. David Pettingill owns 51% of PEI, and his wife Pamela owns 49% of PEI. PEI has 13 employees, including the Pettingills. Those employees will be laid off if the case is converted.

PEI filed a voluntary petition under Chapter 11 of the Bankruptcy Code on February 14, 2012. Two days later, on February 16, 2012, the Individual Debtors filed a voluntary petition under Chapter 11 of the Bankruptcy Code. The Court entered an order providing for the joint administration of the Individual Debtors' case and PEI's case on April 6, 2012. Because the cases were not substantively consolidated, PEI and the Individual Debtors maintained separate counsel. PEI filed an application to employ Moore, Berkson & Gandarilla PC on February 14, 2012, and the Individual Debtors filed an application to employ Cliff Gramer on February 16, 2012. Michael Demarco was substituted as PEI's counsel in October, 2012.

PEI filed its statements and schedules on March 1, 2012; it scheduled assets totaling $6,348,709.00 and liabilities totaling $3,012,445.34. PEI later amended the schedules on May 30, 2012 to reflect assets totaling $9,263,935.62 and liabilities totaling $3,990,042.46. The Individual Debtors filed their statements and schedules on March 7, 2012. They scheduled assets totaling $2,340,007.00 and liabilities totaling $3,776.041.48. The Individual Debtors later amended schedules A and B to reflect assets totaling $2,298,411.63. It is not clear whether the schedules, as amended, are entirely accurate.

PEI believes that its largest asset is its claim against Wanzek Construction, Inc. ("Wanzek"), which is pending in New Mexico state court. Wanzek allegedly breached its construction contract with PEI. According to PEI's amended schedules, the claim against Wanzek is worth approximately $3 million. PEI's counsel believes that the claim will be

resolved within six months.  However, it is unclear from the admitted evidence whether the claim will be litigated in court or arbitrated and how long the applicable process may take.  Further, no trial or arbitration hearing has been set.

David Pettingill Sr. and PEI's General Manager, Harvey Diamond, testified that PEI's unencumbered assets also include: (1) approximately $65,000 worth of equipment; (2) at least $200,000 worth of inventory in the form of excavated rock;[1] and (3) an office building worth $100,000.[2]  The Individual Debtors own property in Mountainair, New Mexico worth approximately $300,000.  According to the schedules, the property is unencumbered.  It includes the Individual Debtors' residence and a shop which is primarily used in PEI's business.  The Individual Debtors claimed a homestead exemption in the amount of $120,000.

The Individual Debtors are also record title owners of the Rock Motel.  The Rock Motel is worth approximately $250,000 and is unencumbered.  It is unclear whether the Individual Debtors or PEI actually own the Rock Motel.  PEI purportedly paid for the motel, operates it as part of its business, and includes it as an asset on its books.[3]

Twenty seven claims have been filed in PEI's Chapter 11 case totaling approximately $5 million.[4]  PEI owes roughly $1 million in taxes.  The Internal Revenue Service ("IRS") filed a claim in PEI's case in the amount of $827,271.42, of which $648,936.54 is allegedly entitled to

---

[1] The value of the inventory owned by PEI is not entirely clear.  At one point, Mr. Pettingill testified that PEI owned 100,000 tons of excavated rock worth between $3.00 and $25.00 per ton depending on the type of rock.  Later, Mr. Diamond clarified that the excavated rock would bring $200,000 if sold.  Because it appears that Mr. Diamond is intimately familiar with PEI's business operation and because the exact amount of inventory owned by PEI is not dispositive, the Court accepts Mr. Diamond's estimate for purposes of this opinion.
[2] PEI also asserts that it owns property known as the "Stewart Ranch," which, according to Mr. Pettingill, has approximately $190,000 worth of equity.  James and Jaynell Stewart claim that they own the Stewart Ranch, including any excavated materials on the land.  The ownership of the Stewart Ranch is in dispute.
[3] The Court is making no determination as to who owns the Rock Motel.
[4] Many of the claims filed in PEI's case (*i.e.* the jointly administered case styled Case No. 12-10515) were also filed in the Individual Debtors' case (Case No. 12-10549).  The amounts referenced in this opinion reflect the amounts listed on each claims register.

-3-

priority. *See* Claim No. 6-3. To date, the IRS has not filed a tax lien to secure repayment of the taxes. PEI has been negotiating with the IRS during the pendency of its bankruptcy case, but the parties have not reached a settlement. The New Mexico Taxation & Revenue Department ("NMTRD") filed an amended proof of claim in PEI's case in the amount of $156,005.53, of which $115,544.77 is allegedly entitled to priority. *See* Claim No. 8-4. It does not appear that NMTRD has filed any tax liens. Other than the unsecured portion of the claims held by the taxing authorities, filed unsecured claims in PEI's case total approximately $3.6 million. Although no claim of this nature has been filed, PEI may be required to reclaim a gravel pit located on property owned by Luther and Carolyn Bullington. The reclamation cost, if not performed by PEI, could exceed $250,000.

Twenty one claims have been filed in the Individual Debtors' case (Case No. 12-10549) totaling approximately $4 million. The Internal Revenue Service ("IRS") filed a claim in that case in the amount of $1,034,049.73, of which $431,954.17 is allegedly entitled to priority. *See* Claim No. 11-2. NMTRD filed an amended proof of claim in PEI's case in the amount of $259,157.37, of which $143,376.32 is allegedly entitled to priority. *See* Claim No. 8-2. No tax liens were filed in the Individual Debtors' case. Other than the unsecured portion of the claims held by the taxing authorities, filed unsecured claims in the Individual Debtors' case total approximately $1.5 million. It appears there is substantial overlap between the claims filed in PEI's case and the claims filed in the Individual Debtors' case.

When the bankruptcy petitions were filed, PEI's books and records were in a state of disarray. At least some of the MORs filed by the Individual Debtors and PEI contain or reflect material deficiencies. PEI reconstructed its books and records after retaining a new accounting firm, Hinkle + Landers, P.C. ("Hinkle + Landers"), on or about August 28, 2012. Nevertheless,

many MORs were either filed late or needed to be amended. PEI filed amended MORs for February, March, April, and May, 2012 on November 14, 2012. PEI filed MORs for June, July, August, September, and October, 2012 on November 26, 2012. In December 2012, the Individual Debtors filed MORs for June through November, 2012.

PEI's MORs, as amended, reflect post-petition short term loans which were incurred and repaid without court approval. On several occasions, Mr. Pettingill's father - Charlie Pettingill - and Pamela Pettingill loaned money to PEI to ensure its account would not be overdrawn. These loans were repaid shortly thereafter. The MORs also reflect transfers between PEI and Genesis Construction & Aggregate ("Genesis"), another company owned by the Individual Debtors, which the Court did not approve.

PEI and the Individual Debtors encountered various other problems in connection with their Chapter 11 cases. They have struggled to keep their tax returns current. PEI sold "scrap" equipment for roughly $50,000 without seeking approval from the Court. Although PEI continued to make regular payments to certain creditors after the petition was filed, PEI ceased making payments to others, resulting in administrative claims. Further, PEI has not pursued an adversary proceeding it commenced against Blackstone Equipment Financing, LP ("Blackstone") to avoid certain transfers pursuant to 11 U.S.C. § 548. PEI alleges that it transferred equipment worth $1.2 million to Blackstone for approximately $400,000.[5]

PEI filed a Chapter 11 Plan in June, 2012 and an Amended Chapter 11 Plan ("Amended Plan") on February 5, 2013. PEI abandoned the confirmation process after a number of creditors objected to the Amended Plan. The Individual Debtors have not filed a Chapter 11 Plan.

---

[5] It is unclear whether, and to what extent, this claim has value.

The following creditors expressed a preference regarding conversion or dismissal of the Chapter 11 cases:[6]

| Creditor | Type of claim | Debtor | Approximate amount of asserted claim | Preference |
|---|---|---|---|---|
| Bane Machinery | Administrative - equipment lease | PEI | $103,000[7] | Conversion |
| Moore, Berkson, & Gandarilla P.C. | Administrative, legal services | PEI | $53,000 | Conversion |
| Golden Equipment | Administrative & unsecured - equipment lease | Both | $600,000 | Conversion |
| Tom Growney Equipment | Administrative & unsecured - equipment lease | Both | $114,000 | Conversion |
| Power Equipment | Administrative & unsecured - equipment lease | PEI | $280,000 | Conversion |
| James & Jaynell Stewart | Claim under a real estate contract | PEI | $400,000 | Conversion |
| Titan Construction | Materials supplier | PEI | $48,000 | Dismissal |
| Herb Plume | Unsecured | PEI | $108,000 | Dismissal |
| Larry Carver | Unsecured | Both | $25,000 | Dismissal |
| Luther & Carolyn Bullington | Administrative & unsecured – real property lease | PEI | $41,000 | Dismissal |

The United States Trustee favors dismissal rather than conversion to Chapter 7. Hinkle + Landers also participated in the final hearing on the Motions. PEI and the Individual Debtors owe between $40,000 and $60,000 to Hinkle + Landers for post-petition accounting work.

---

[6] The chart reflects claims on file and certain representations made by the creditors who appeared at the final hearing on the Motions. These findings do not conclusively establish whether, and to what extent, such creditors hold allowable claims. Creditors may have additional claims not referenced in the chart. It is also unclear whether Golden Equipment or Tom Growney Equipment will assert any administrative claims in the Individual Debtors' case.

[7] Bane Machinery previously asked the Court to allow, as a priority administrative expense, rental charges and repair costs in the amount of $233,687.54 for PEI's use of Bane Machinery's construction equipment. By an order entered February 6, 2013, the Court allowed a priority administrative expense in the amount of $110,402.93. *See* Docket No. 416. PEI paid the amount entitled to super-priority administrative status ($6,992.92). The unpaid amount of Bane Machinery's administrative claim is approximately $103,000.

Farley Venner, an accountant at that firm, did not express a clear preference regarding conversion or dismissal.

The Court commenced a hearing on the Motions on June 27, 2013. Because the parties did not finish within the allotted time, they consented to a continuance until July 16, 2013. Further, compelling circumstances prevented the Court from meeting the time limits established by 11 U.S.C. § 1112(b)(3).[8] Those circumstances include the Court's docket and the time necessary to complete a thorough, appropriate analysis of the issues.[9]

## DISCUSSION

Conversion or dismissal of a Chapter 11 case is governed by 11 U.S.C.§ 1112 (b)(1), which provides:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause….

Section 1112(b) establishes a two-step process for considering the question of conversion or dismissal. The Court "first determines whether there is 'cause' to convert or dismiss," and if cause is found, the Court considers whether "conversion or dismissal ... [is in the] best interest of creditors and the estate." *In re American Capital Equipment, LLC,* 688 F.3d 145, 161 (3rd Cir. 2012).[10] Section 1112(b)(4) contains a nonexclusive list of grounds that constitute cause for

---

[8] That section provides:
> The court shall commence the hearing on a motion under this subsection not later than 30 days after filing of the motion, and shall decide the motion not later than 15 days after commencement of such hearing, unless the movant expressly consents to a continuance for a specific period of time or compelling circumstances prevent the court from meeting the time limits established by this paragraph.

11 U.S.C. § 1112(b)(3).

[9] Any additional facts recited in the Discussion are incorporated by reference in the Court's findings.

[10] *See also In re Nelson,* 343 B.R. 671, 675 (9th Cir. BAP 2006) (stating that Section 1112(b) "establish[es] a two-step analysis for dealing with questions of conversion and dismissal" so that once cause has been demonstrated, "a choice must be made between conversion and dismissal based on the

conversion or dismissal.  *In re Frieouf,* 938 F.2d 1099, 1102 (10th Cir. 1991) (noting that the list contained in Section 1112(b)(4) is nonexhaustive).

No party in interest opposes either conversion or dismissal of the Chapter 11 cases.  PEI abandoned its Amended Plan after several creditors objected to it, and the Individual Debtors never filed a Chapter 11 Plan.  Neither PEI nor the Individual Debtors believe they can successfully reorganize under Chapter 11 of the Bankruptcy Code.  The Court agrees that there is sufficient cause to either dismiss or convert the Chapter 11 cases under 11 U.S.C. § 1112(b).  The Court will therefore consider whether dismissal or conversion is appropriate in each case.

The Bankruptcy Code does not provide criteria to determine whether to dismiss or convert a Chapter 11 case upon a finding of cause, other than consideration of what is in the "best interest" of creditors and the bankruptcy estate.  *See Lakefront Investors LLC v. Clarkson,* 484 B.R. 72, 82 (D.Md. 2012) (noting that "the Bankruptcy Code does not identify factors … to consider when determining the remedy in the 'best interests of creditors and the estate'").[11]  The decision to convert or dismiss falls within the sound discretion of the court.  *See Loop Corp. v. U.S. Trustee,* 379 F.3d 511, 515 (8th Cir. 2004) ("The bankruptcy court has broad discretion in deciding whether to dismiss or convert a Chapter 11 case.").[12]  Factors considered by courts

---

best interest of creditors and the estate.") (internal quotations omitted); *In re Superior Siding & Window, Inc.,* 14 F.3d 240, 242 (4th Cir. 1994) (stating that a motion filed under §1112(b) "invokes a two-step analysis, first to determine whether cause exists either to dismiss or to convert the Chapter 11 proceeding to a Chapter 7 proceeding, and second to determine which option is in the best interest of creditors and the estate.") (internal quotations omitted).

[11]*See In re Van Eck,* 425 B.R. 54, 67 (Bankr.D.Conn. 2010) ("The Code does not define the phrase "best interests of creditors and the estate.") (quoting 7 *Collier on Bankruptcy* ¶ 1112 (16 ed. rev. 2009)); *In re Helmers,* 361 B.R. 190, 950 (Bankr.D.Kan. 2007) (noting that "[t]he Code does not … set forth what factors to consider in determining what is in the best interests of creditors and the estate."); *Keven A. McKenna, P.C. v. Official Committee of Unsecured Creditors*, 2011 WL 2214763, * 6 (D.R.I. 2011) ("Unfortunately, the bankruptcy code does not define the phrase 'best interests of creditors and the estate.'").

[12] *See also In re Lovell's American Car Care, LLC,* 2010 WL 2769056, * 6 n.10 (10th Cir. BAP 2010) (noting that "the Bankruptcy Court's decision to dismiss rather than convert to Chapter 7 would be reviewed for abuse of discretion"); *In re Mitan,* 573 F.3d 237, 247 (6th Cir. 2009) (same).

when considering whether dismissal or conversion under 11 U.S.C. § 1112(b) is in the best interest of creditors and the estate include:

> (1) whether some creditors received preferential payments, [and] whether equality of distribution would be better served by conversion rather than dismissal; (2) whether there would be a loss of rights granted in the case if it were dismissed rather than converted; (3) whether the debtor would simply file a further case upon dismissal; (4) the ability of the trustee in a chapter 7 case to reach assets for the benefit of the creditors; (5) in assessing the interests of the estate, whether conversion or dismissal would maximize the estate's value as an economic enterprise; (6) whether any remaining issues would be better resolved outside the bankruptcy forum; (7) whether the estate consists of a "single asset;" (8) whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests; (9) whether a plan had been confirmed and whether any property remains in the estate to be administered; and (10) whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.

*Helmers,* 361 B.R. at 196-197 (Bankr.D.Kan. 2007) (quoting 7 Collier on Bankruptcy , ¶ 1112.04[6] (15th ed. rev.2005)). *See also In re Veltmann,* 2007 WL 4191736 (Bankr.D.N.M. 2007) (applying the same factors). The Court may also consider the preferences expressed by creditors. *See In re Ferri,* 2010 WL 1418147, *4 (Bankr.D.N.M. 2010); *In re Gollaher,* 2011 WL 6176074, *4 (10th Cir. BAP 2011) ("Courts … consider the preferences expressed by creditors for either dismissal or conversion as they are the best judge of their own best interests.").

Several of the factors are not applicable in either Chapter 11 case. Neither bankruptcy estate consists of a single asset, nor are there environmental or safety concerns. Although at least one of the Individual Debtors has previously sought bankruptcy relief, the Court finds that it is unlikely that they or PEI would file a further case upon dismissal.

The Court is sensitive to the fact that the Individual Debtors and PEI have made substantial strides towards rehabilitating PEI's business. Mr. and Mrs. Pettingill worked closely with their accountants, attorneys, and advisors to reconstruct business records. They paid off

-9-

Case 12-10515-j7    Doc 544    Filed 09/23/13    Entered 09/23/13 16:39:52 Page 9 of 14

substantial post-petition tax arrearages and implemented new procedures designed to increase profitability. Nevertheless, the Court finds that conversion of both Chapter 11 cases to Chapter 7, rather than dismissal, is in the best interests of creditors and the respective estates.

### *I. Conversion or Dismissal of the Individual Debtors' Chapter 11 Case*

Conversion, rather than dismissal, of the Individual Debtors' case is appropriate for several reasons. First, conversion better ensures the appropriate disposition of the Individual Debtors' assets for the benefit of creditors. Mr. Pettingill testified that he and his wife own approximately $300,000 of property, of which $120,000 is exempt. The property - which has a net value for the estate of $180,000 - consists of the Individual Debtors' house and shop. However, their schedules also list approximately $575,000 in equipment that appears to be used in PEI's business. A Chapter 7 trustee will be able to sort out how much property is owned by the Individual Debtors and available for their creditors.

Further, independent, disinterested trustees in the PEI and Individual Debtors cases could evaluate whether the Rock Motel is an asset of the Individual Debtors or of PEI, and either settle any dispute or file an adversary proceeding to determine the ownership of the motel. The Rock Motel is titled in the Individual Debtors' names. If the Individual Debtors' Chapter 11 case were dismissed, the IRS and/or NMTRD could file a tax lien against the Rock Motel based on record title. If it turns out that the Rock Motel is an asset of the PEI bankruptcy estate, it is unclear to what extent PEI's creditors would be prejudiced by the filing of any tax liens. Conversion of the Individual Debtors' case, instead of dismissal, would eliminate this risk.

There is also no evidence that the Individual Debtors directed their accountants to conduct an independent analysis regarding the validity or extent of the IRS' claim. A trustee

-10-

therefore needs to evaluate whether to object to that claim in order to preserve the rights of the remaining creditors.

Finally, equality of distribution would be better served by conversion of the Individual Debtors' case. As is typical prior to confirmation, no administrative claims bar date was fixed in the Individual Debtors' Chapter 11 case. The Individual Debtors' bankruptcy professionals hold administrative claims against the Individual Debtors. Conversion to Chapter 7 will give other creditors an opportunity to assert Chapter 11 administrative expense claims. If the case is converted, there is a reasonable prospect that those claims will be paid, at least in part, given the non-exempt equity in assets of the estate. *See* 11 U.S.C. § 507(a) (providing that administrative expenses allowed under Section 503(b) have second priority in the distribution of assets of the estate while tax claims have, at best, eighth priority). In the event of dismissal, there is substantial risk that the taxing authorities will file tax liens against the Individual Debtors' property, thereby depriving administrative claimants of any prospect of being paid. Even if no tax liens are filed, the Individual Debtors' may (understandably) resist the sale of their house and shop to pay the nonexempt value to creditors who would have benefited from the sale in a Chapter 7 case.

The Court therefore finds that conversion is in the best interests of the Individual Debtors' creditors and their estate.

### *II. Conversion or Dismissal of PEI's Chapter 11 Case*

Many of the reasons for converting the Individual Debtors' case also apply in PEI's case. Conversion, rather than dismissal, would allow the Chapter 11 administrative claimants a reasonable opportunity to get paid, at least in part. As in the Individual Debtors' case, the taxing authorities may very well file tax liens that would encumber all or substantially all of PEI's

-11-

Case 12-10515-j7    Doc 544    Filed 09/23/13    Entered 09/23/13 16:39:52 Page 11 of 14

property. A Chapter 7 trustee also needs to sort out exactly which assets PEI owns, including the Rock Motel.

Several factors favoring conversion only apply to PEI. Of those creditors of PEI who expressed a preference, the majority prefer conversion. The six creditors preferring conversion hold claims totaling approximately $1.5 million, while the four creditors preferring dismissal hold claims totaling approximately $222,000. Most of the creditors preferring dismissal were friends or business associates of Mr. Pettingill and did not fully understand the risks associated with dismissal. For example, Ryan Roach and Larry Carver testified that they were not aware PEI owed upwards of $1 million in taxes or that the IRS could file a tax lien following dismissal.

There is also evidence that certain creditors of PEI received regular payments during the pendency of PEI's case, while creditors with which PEI had a dispute - such as James & Jaynell Stewart, for example - did not receive any such payments. There is some risk, therefore, that PEI will pay certain preferred creditors upon dismissal, leaving the remainder to participate in a "race to the courthouse" to secure payment.

In addition, PEI elected not to pursue the adversary proceeding it commenced against Blackstone. That adversary proceeding is still pending. PEI alleged that it transferred equipment worth $1.2 million to Blackstone for approximately $400,000. A trustee should evaluate whether to pursue that adversary proceeding.

PEI and the UST's primary argument in favor of dismissal is that a Chapter 7 trustee will not litigate PEI's suit against Wanzek as tenaciously as PEI. PEI contends that, if it is able to litigate that suit to judgment, all of the creditors will be paid in full. PEI's Chapter 11 Case was filed over a year and half ago on February 14, 2012. PEI did not obtain relief from the automatic stay to pursue the Wanzek litigation until March 15, 2013, over a year later. *See* Order

Modifying Automatic Stay (Docket No. 452 in Case No. 12-10515). It is unclear where the litigation will occur or when it will be complete. Further, even if PEI prevails on the merits, there is no guarantee PEI will recover enough to pay its creditors in full. Mr. Pettingill testified that he would cooperate fully with a Chapter 7 trustee in the prosecution of the Wanzek litigation. Although a trustee may not have the same motivation as Mr. Pettingill with regard to the Wanzek litigation, a trustee is able to pursue that action.

PEI also asks the Court to dismiss its case to prevent the business from shutting down. PEI points out that 13 employees will be laid off if the case is converted. The Court's decision to convert PEI's case to Chapter 7 was not made lightly. In evaluating the best interests of creditors and the estate, the Court considered the practical impact of conversion on all parties involved. Several of PEI's larger creditors indicated that they are not inclined to negotiate with PEI upon dismissal. If those creditors exercised their remedies in state court after the case is dismissed, PEI's business could very well close, resulting in the same loss of jobs. The Court determined that conversion, rather than dismissal, better preserves the rights of the interested parties as a whole.

Conversion is therefore in the best interests of PEI's creditors and its estate.

## CONCLUSION

Based on the foregoing, the Court concludes that conversion, rather than dismissal, is in the best interest of creditors and the respective bankruptcy estates. The Court will allow PEI and the Individual Debtors twenty one (21) days to wind down their business and to prepare the schedule and report required by Fed.R.Bank.P. 1019(5)(A) before the case is converted. The Court will enter an order converting each case to Chapter 7 twenty one (21) days after entry of this memorandum opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Entered on Docket Date: September 23, 2013

COPY TO:

Louis Puccini, Jr
P.O. Box 50700
Albuquerque, NM 87181-0700

Michael Demarco
Box 390
McIntosh, NM 87032-0390

Chris Gatton
10400 Academy NE, Suite 350
Albuquerque, NM 87111

Clifford C Gramer, Jr
3733 Eubank Blvd NE
Albuquerque, NM 87111-3536

Leonard Metzgar-Martinez
P.O. Box 608
Albuquerque, NM 87103-0608

D. Brett Marks
350 East Las Olas Boulevard, Suite 1600
Fort Lauderdale, FL 33301

Stephanie L. Schaeffer & Thomas D. Walker
500 Marquette Ave NW Ste 650
Albuquerque, NM 87102-5309

Arin Berkson
3800 Osuna Rd NE, Ste #2
Albuquerque, NM 87109

David G Reynolds
3949 Corrales Road, Suite 210
Corrales, NM 87048